UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ROMEO SINGH, A# 071492645,**

**Petitioner,**

**v.** **Case No. 2:26cv728**

**PAUL PERRY, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"). ECF No. 1. Respondents oppose granting the Petition. ECF No. 6. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. ECF No. 7. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED** and **DISMISSED** without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court received the Petition on July 7, 2026, and filed it on July 14, 2026. *See* ECF No. 1 at 1. Petitioner Romeo Singh ("Petitioner") is a native and citizen of Guyana who is currently detained pursuant to 8 U.S.C. § 1231 at Caroline Detention Facility pending his removal.[1] ECF No. 6, attach. 1 at ¶¶ 5, 28. On November 30, 1990, U.S. Customs and Border Protection ("CBP") admitted Petitioner into the United States at New York on a B-2 temporary tourist visa, which expired on May 30, 1991. *Id.* at ¶ 6. On December 30, 1990, the Immigration and Naturalization

[1] The factual assertions recited here are taken from the Declaration of Justin Richardson, Supervisory Detention and Deportation Officer with Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). ECF No. 6, attach. 1.

Service ("INS") Norfolk office allowed Petitioner to voluntarily depart the United States and served him with a Form I-210, Voluntary Departure and Verification of Departure, requiring him to depart on or before January 29, 1991. *Id.* at ¶ 7. Petitioner did not depart by that date. *Id.* at ¶ 8.

On August 1, 2000, the Bertie Superior Court convicted Petitioner of Larceny of Firearms (Felony), in violation of North Carolina General Statute § 14-72(B), and sentenced him to eight months' incarceration. *Id.* at ¶ 9. On December 7, 2000, INS Atlanta served Petitioner with a Form I-862, Notice to Appear ("NTA"), initiating removal proceedings before an Immigration Judge ("IJ"). *Id.* at ¶ 10. On February 27, 2001, an IJ ordered Petitioner removed from the United States to Guyana, with India designated as an alternate country of removal. *Id.* at ¶ 11. Petitioner waived his right to appeal, and the order of removal became final. *Id.*

On March 20, 2001, while Petitioner was in custody, INS attempted to obtain travel documents from the Guyana Embassy to effectuate his removal. *Id.* at ¶ 12. On August 31, 2001, after it appeared that a travel document could not be obtained in the foreseeable future, Petitioner was served with a Form I-220B, Order of Supervision ("OSUP"), and released from INS custody. *Id.* at ¶ 13. On December 17, 2002, INS revoked Petitioner's OSUP and took him back into custody after determining that he had moved from Georgia without notifying or obtaining permission from INS, which violated the conditions of his OSUP. *Id.* at ¶ 14. While Petitioner was in custody, INS made additional unsuccessful attempts to obtain a travel document from the Guyana Embassy. *Id.* at ¶ 15. Petitioner was released on an OSUP on June 3, 2004, and, on December 4, 2004, INS Atlanta processed Petitioner and again released him on OSUP. *Id.* at ¶¶ 15–16.

Between 2009 and 2020, Petitioner incurred several criminal convictions in Virginia. On June 23, 2009, the Norfolk General District Court convicted Petitioner of Public Swearing or Intoxication, in violation of Virginia Code § 18.2-388, and imposed restitution. *Id.* at ¶ 17. On July 15, 2009, the Isle of Wight Circuit Court convicted Petitioner of Firearm: Possess by Felon Nonviolent within ten years, in violation of Virginia Code § 18.2-308, and sentenced him to three years' incarceration with two years and ten months suspended. *Id.* at ¶ 18. On September 7, 2010, the Suffolk General District Court convicted Petitioner of Driving While Intoxicated, in violation of Virginia Code § 18.2-266, and sentenced him to thirty days' incarceration. *Id.* at ¶ 19. On June 27, 2019, the Suffolk Juvenile and Domestic Relations Court convicted Petitioner of violating a protective order, in violation of Virginia Code § 18.2-253.2, and sentenced him to twelve months' incarceration. *Id.* at ¶ 20. On January 23, 2020, the same court convicted Petitioner of Assault on a Family Member, in violation of Virginia Code § 18.2-57.2, and sentenced him to twelve months' incarceration. *Id.* at ¶ 21.

On February 8, 2020, Enforcement and Removal Operations ("ERO") officers encountered Petitioner at the Western Tidewater Regional Jail after he completed the sentence imposed for his protective-order violation. *Id.* at ¶ 22. ERO officers served Petitioner with a Form G-56, Call-In Letter, requiring him to report to the Norfolk ICE Office on February 10, 2020, for processing. *Id.* Petitioner reported as directed on February 10, 2020, and ERO Norfolk processed and released him on an OSUP "due to the unlikelihood of removability." *Id.* at ¶ 23.

On June 4, 2026, the Suffolk Police Department arrested Petitioner for Intoxication in Public, in violation of Virginia Code § 18.2-388. *Id.* at ¶ 24. Petitioner was found guilty in absentia. *Id.* On June 6, 2026, ERO Norfolk arrested Petitioner. *Id.* at ¶ 25. The Department of Homeland Security ("DHS") issued Petitioner a Notice of Revocation of Release, stating that his

OSUP was being revoked and he was being arrested based on his continuous criminal activity and felony convictions. *Id.* DHS officers conducted an informal interview to provide Petitioner an opportunity to respond to the reasons for the revocation, but Petitioner made no verbal or written statements regarding the revocation. *Id.*

On June 24, 2026, DHS officers met with Petitioner to obtain information necessary to request a travel document. *Id.* at ¶ 26. According to ICE, "Petitioner was not forthcoming with information to assist in issuance of a travel document from India or Guyana." *Id.* Petitioner stated that he had never claimed to be from Guyana, despite previously completing a letter to the Guyana government stating that he was born in Guyana and was a citizen of Guyana. *Id.* Petitioner also stated that he was from India but did not know how he came to the United States or with whom he came. *Id.* When asked to provide the names of his parents, Petitioner gave different names on different occasions and had also stated that he did not know who his parents were. *Id.* On July 6, 2026, DHS officers again spoke with Petitioner to try obtaining information for a travel document, but Petitioner again did not provide the requested information. *Id.* at ¶ 27.

The Petition was filed on July 14, 2026. ECF No. 1. Therein, Petitioner argues that his continued detention violates the Due Process Clause of the United States Constitution and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ECF No. 1 at 2, 6. He argues that his removal is not reasonably foreseeable and that he has cooperated with ICE in securing travel documents but has not yet been removed. *Id.* at 6. Accordingly, Petitioner seeks his immediate release from ICE custody. *Id.* at 8.

On July 16, 2026, this Court issued an Order that Respondents file a notice as to whether the factual and legal issues presented in the Petition differ from *Ceba Cinta v. Noem*, No. 1:25-cv-1818 (E.D. Va. Oct. 29, 2025) or an opposition to the Petition discussing the material differences

between *Ceba Cinta* and the Petition. ECF No. 4. The Order additionally ordered Petitioner's reply be due by July 29, 2026, and prohibited Petitioner's removal or transfer from this district for any reason without this Court's permission. *Id.* at 2.

Respondents filed an Opposition to the Petition on July 22, 2026, along with the Declaration of Justin Richardson, Supervisory Detention and Deportation Officer with ICE ERO. ECF No. 6; ECF No. 6, attach. 1. Respondents argue that the Petition should be dismissed because Petitioner's detention complies with *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) because Petitioner's detention has not exceeded six months—and thus remains within the presumptively reasonable period set by *Zadvydas*—and Petitioner cannot demonstrate that his removal is not reasonably foreseeable. ECF No. 6 at 7–6. Respondents further argue that Petitioner requests additional due process than what is required under *Zadvydas*, and that even if Petitioner was entitled to additional due process, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. *Id.* at 12–17. The Petition was then referred to the undersigned for a Report and Recommendation on July 23, 2026. ECF No. 7.

Petitioner did not file a reply by the July 29, 2026, deadline. On August 17, 2026, Petitioner filed a submission consisting of eight letters dated July 21, 2026, along with their corresponding envelopes. ECF No. 8. Each letter is addressed to the embassy of a different country—including Guyana and India—and requests that the embassy grant Petitioner's "request for a visa to leave or vacate the United States of America." *Id.*

Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). "Section 1231 governs the detention and removal of aliens subject to administrative final orders of removal, including reinstated orders of removal." *Castaneda*, 95 F.4th at 754. The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien[2] demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond

[2] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

**A. Petitioner's Detention is Presumptively Reasonable.**

Respondents argue that Petitioner's detention is presumed lawful under *Zadvydas* because Petitioner has not been detained for longer than six months. ECF No. 6 at 9. Here, Petitioner has been in post-final-order detention since June 6, 2026, for less than three months. Accordingly, his detention falls within the six-month presumptively reasonable period recognized in *Zadvydas*,[3] and the question becomes whether Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If he has, then the burden shifts to the Government to rebut that showing. If he has not, then his claim fails.

**B. Petitioner Has Not Shown that His Removal is Not Reasonably Foreseeable.**

Petitioner has not met his burden to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. The record

---

[3] Respondents contend that, because Petitioner has been detained under § 1231 for less than six months, his detention is categorically presumptively reasonable and cannot be challenged under *Zadvydas* until the six-month period has elapsed. ECF No. 6 at 8–9. The Court disagrees with that characterization of *Zadvydas*. The Supreme Court described six months as the period during which detention is "presumptively reasonable," not as a jurisdictional or absolute bar to a challenge to detention. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Thus, the fact that Petitioner has been detained for fewer than six months does not, on its own, bar him from raising a *Zadvydas* challenge. *See, e.g.*, *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)); *Rojas Toj v. Mullin*, No. 1:26-CV-1142, 2026 WL 1458900, at *3 (E.D. Va. May 21, 2026) ("[A]s courts in this Circuit have recognized, *Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable." (citation and quotation marks omitted)).

demonstrates that Respondents are actively pursuing Petitioner's removal. On June 24 and July 6, 2026, ERO officers met with Petitioner to obtain information necessary to secure a travel document from Guyana or India, but Petitioner did not provide the requested information and, in some instances, gave inconsistent information regarding his country of origin and family history. *See* ECF No. 6, attach. 1 at ¶¶ 26–27 ("Petitioner stated that he never claimed to be from Guyana, yet has filled out a letter to the Guyana government stating he was born in Guyana and a citizen of Guyana. Petitioner also stated he was from India, but does not know how he came to the United States or with whom he came to the United States. When asked for the names of his parents, Petitioner provided different names for his parents every time he has been encountered.").

Thus, the record reflects ongoing efforts by Respondents to obtain travel documents to effectuate removal, while Petitioner's own non-cooperation has impeded those efforts. *See* 8 U.S.C. § 1231(a)(1)(C) (permitting continued detention where an alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal"); *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 694 (E.D. Va. 2005) (finding that removal was reasonably foreseeable where "the delay in [the petitioner's] removal, and thus his continued confinement pending removal, are the direct result of [the petitioner's] unreasonable refusal to accept free and appropriate dental and surgical treatment by a specialist"); *Mattete v. Loiselle*, No. 2:06-CV-652, 2007 WL 3223304, at *5 (E.D. Va. Oct. 26, 2007) (finding that removal was reasonably foreseeable where "for almost the entire length of his confinement, petitioner refused to fill out the application for travel documents, refused to provide fingerprints and photos, refused to participate in telephone interviews with the Tanzanian consular, and gave false information regarding the person to contact to obtain his Kenyan birth certificate"). Under these circumstances, Petitioner's

assertion that his removal is not reasonably foreseeable, without evidence demonstrating that removal is unlikely despite Respondents' ongoing efforts, is insufficient to satisfy his burden under *Zadvydas*.

Additionally, Petitioner's submission on August 17, 2026, of letters to various foreign embassies requesting a visa to "leave or vacate the United States of America" does not establish that his removal is unlikely in the reasonably foreseeable future. *See* ECF No. 8. While the letters demonstrate that Petitioner has taken some steps toward securing his departure, they also do not establish that removal cannot be effectuated in the reasonably foreseeable future. Accordingly, Petitioner has failed to meet his burden of demonstrating that there is no significant likelihood of his removal in the reasonably foreseeable future.

### C. Petitioner Has Not Demonstrated Exceptional Circumstances Warranting Departure from the *Zadvydas* Framework.

Finally, Petitioner does not demonstrate "exceptional circumstances" necessary to justify a departure from the *Zadvydas* framework. "[A]s-applied constitutional challenges remain available to address 'exceptional' cases" that warrant departing from the *Zadvydas* framework. *Id.* at 761 (quoting *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022)). Here, Petitioner does not allege, nor does the record suggest, any exceptional circumstances warranting a departure from the *Zadvydas* framework. Petitioner argues that his prolonged detention violates his due process rights, but the length of detention alone does not render circumstances "exceptional." *See id.* Because the record does not reflect any type of exceptional circumstances, Petitioner has not shown that relief outside the *Zadvydas* framework is warranted.[4]

[4] Respondents further argue that even if Petitioner was entitled to additional due process beyond what is required under *Zadvydas*, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. ECF No. 6 at 12–17. This Court has previously recognized that *Zadvydas* defines the process to which Petitioner is entitled. *See, e.g.*, *Wang v. Crawford, et al.*, No. 2:26-cv-111, ECF No. 12 at 8, *report and recommendation adopted*, No. 2:26-cv-111, ECF No. 13.

Accordingly, Petitioner's continued detention does not implicate the constitutional concerns addressed in *Zadvydas*, and Respondents are entitled to maintain custody to effectuate his removal.

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED** and **DISMISSED** without prejudice to Petitioner's ability to refile should his detention extend beyond the presumptively reasonable period under *Zadvydas*, or should removal become not reasonably foreseeable.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

---

Accordingly, the Court need not separately address Respondents' arguments regarding due process under *Mathews v. Eldridge*.

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 25, 2026